*115 ORDER REMANDING ENROLLMENT COMMITTEE DETERMINATION
ENGLISH, Chief Judge.
I. ISSUES PRESENTED
Petitioner appeals from the Enrollment Committee’s (Committee) decision to deny her application for enrollment in the Confederated Tribes of the Grand Ronde Community of Oregon. On appeal, her two related claims are: (1) that she was deprived of due process because, when she contacted the Tribe’s enrollment staff by fax in April 1999, asking for forms so that she could seek enrollment in the Tribe, she received no response, despite repeated phone calls, only to be told, eventually, that the Tribal Constitution had been amended and so she no longer qualified to be a member; and (2) that the Committee’s decision “was arbitrary and capricious because the Enrollment Committee retroactively applied the wrong version of the Tribal Constitution in making its enrollment determination.” In elucidating that latter claim, Petitioner contends that, had she received “the professional assistance” from enrollment staff, to which she believes she was entitled, she “would have been on the [enrollment] roll, [by] the summer of 1999.” Instead, she did not apply for enrollment until September 2000. By that time, she asserts, she had learned of the opportunity to seek judicial review of the Enrollment Committee’s decision, which is what prompted her to apply then.
II. BACKGROUND
Petitioner insists that she sent a fax to Tribal enrollment staff in April 1999, asking that enrollment forms be sent to her, that, when she received no response, she telephoned repeatedly, leaving a message in each instance but again receiving no response, and that, by the time she eventually received a return call, she was told that the Tribal Constitution had been amended and that she no longer qualified for enrollment. Apparently feeling thwarted, she did not apply for enrollment at that time. Instead, she did not apply until September 2000, by which time she says that she had learned she could seek judicial review of the Enrollment Committee’s decision. The Committee denied her December 2000, application because she did not have a parent who was enrolled in the Tribe at the time of her birth.
On July 27, 1999, the Bureau of Indian Affair’s (BIA) conducted an election by eligible Tribal members to amend the Tribal Constitution. At the election, the amendment was approved by a considerable majority of the Tribal membership. In September 1999, the Secretary of the Interior approved the amendment and it became effective. The amendment altered, and in certain respects increased, the Tribal membership requirements. Following the effective date of the amendment, the Tribal Enrollment Committee applied the amendment to pending and new applications for Tribal membership, including Petitioner’s. Among the provisions new to the amendment was one requiring that an applicant for Tribal membership have had *116 a parent who was on the Tribal roll when the applicant was born. Petitioner presented her procedural complaints to the Committee, which at one point asked her if she had any additional supporting evidence, which she did not. After the Committee’s final adverse decision, Petitioner sought judicial review in this Court.
III. STANDARD OF REVIEW
In appeals from decisions of the Enrollment Committee, this Court’s scope of review is limited. The Court can reverse or remand only if it finds that the Enrollment Committee’s decision was “arbitrary and capricious or a violation of Tribal Constitutional rights.” Enrollment Ordinance § (d)(4)(H).
IV. ANALYSIS
As noted at the outset, Petitioner presents two interrelated claims, one couched as a due process claim and the other as a claim that the Committee’s action was arbitrary and capricious. Both claims depend on the assumption that enrollment staff had some legal duty to assist Petitioner in filing her application and that, but for staffs mistakes, she would have applied for membership before the Tribal Constitution was amended in 1999, and w'ould have become a member. Petitioner’s assumption is false, however. Whatever duty enrollment staff may have owed her, or any other applicant, as a matter of professionalism or courtesy, staff owed her no legal duty. Petitioner had no due process right to notice of the impending change in Tribal law or to any particular response from the enrollment staff. And the failure to give her such notice or the response she wanted—-and felt she was entitled to—did not mean that the Enrollment Committee’s decision was an arbitrary or capricious one.
Although this may not be entirely clear, at least at times Petitioner seems to be claiming that enrollment staff had some obligation to give her notice of the looming change to the Tribal Constitution, of her right to appeal from the Enrollment Committee’s decision, or of the application procedures for membership. Any such requirement, however, would contravene “[t]he common law rule that every person is presumed to know the law.” United States v. Hancock, 231 F.3d 557, 565 (9th Cir.2000).
Moreover, any such view of the “notice” requirement of due process would distort that requirement. Government must give notice when it is about to do something to someone, or when someone is particularly targeted by government action, not when the law may be changed, as it was when the Tribal Constitution was amended in 1999. “Generally, if the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.’ ” Hotel & Motel Ass’n of Oakland v. City of Oakland,, 344 F.3d 959, 969 (9th Cir.2003), quoting Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th Cir.1995) (as amended) (internal quotation marks omitted in Oakland decision). Thus,
“governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individualized notice and hearing; general notice as provided by law is sufficient.”
Hotel & Motel Ass’n of Oakland, 344 F.3d at. 966, quoting Halverson, 42 F.3d at 1261.
In sum, as a matter of due process, Petitioner received all the notice and all the process to which she was constitutionally entitled. See also In the Matter of Gillette v. Confederated Tribes of Grand *117 Ronde, Case No. C-00-07-009 at 9, 2001 WL 36155775, 3 Am. Tribal Law 221, 227 (Grand Ronde 2001) (rejecting due process claim based on allegation that Tribe failed to provide applicant with notiee when his mother and sister were accepted as Tribal members); In the Matter of Miller v. Confederated Tribes of Grand Ronde, Case No. C-00-07-013 at 3, 2001 WL 36155772, 3 Am. Tribal Law 264, 265-66 (Grand Ronde 2001) (rejecting due process claim based on allegation that Tribal staff was negligent in maintaining Tribal enrollment records).[1]
Petitioner’s complaint that the Enrollment Committee’s decision was arbitrary and capricious can fare no better than her due process one. Again, her complaint depends upon the assumption that enrollment staff owed her some legal duty—an assumption that is not correct. Moreover, although clothed in slightly different garb, this claim appears to amount to a claim of negligence aimed at enrollment staff. As this Court has held in other enrollment cases, in an appeal from an enrollment decision it has no legal authority to consider claims of negligence. See, e.g., Gillette, at 10, 3 Am. Tribal Law at 228.
In affirming in this case, the Court in no way overlooks the frustration and sorrow that Petitioner feels at what she views as less-than-professional treatment by enrollment staff leading to her inability to become a member of this Tribe. But the Court’s scope of review is limited, and the Court must respect those limits. The Tribe has the right to define its own membership, Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)—a right that is central to tribal sovereignty. When the Constitution was amended in 1999, the Tribe and its existing members exercised that right. Petitioner was not entitled to a freeze in the law, to notice of the impending change in the law, or to any particular assistance by enrollment staff. Both her frustration and her sadness may be understandable, but she was not deprived of due process and the Enrollment Committee’s action was not arbitrary or capricious.
V. CONCLUSION
For the reasons given above, the decision of the Enrollment Committee is AFFIRMED.

. In response to Petitioner's due process claim, the Tribe argues that Petitioner cannot have been deprived of due process because she had no protected liberty or property interest at stake here. At most, she had a desire, hope, or expectation of being admitted into the Tribe. Unless she had a protected liberty or property interest, her due process claim must fail for that reason alone. See American Mfrs., Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 61, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (under state workers' compensation system, claimants do not have a property interest in payments for medical treatments for which they are eligible, but to which they are not yet entitled). The Court agrees with the Tribe's argument, which provides an alternative basis for this decision.